DARLENE C. VIGIL
CA NO. 223442
BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
20955 PATHFINDER ROAD
SUITE 300
DIAMOND BAR, CA 91765
Phone: (626) 915-5714, Fax: (972) 661-7726
E-mail: sdcaecf@BDFGroup.com
FILE NO. 00000007566656

Attorneys for Movant
WELLS FARGO BANK, N.A.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO DIVISION

| | |
|---|---|
| In re:<br>FAMILY MORTGAGE OPTIONS, LLC<br>*dba* FAMILY FORECLOSURE RESCUE,<br><br><br><br><br>Debtor(s). | CASE NO.:    17-04302-CL7<br>CHAPTER:    7<br>R.S. NO.:    EAT-1<br><br>DECLARATION IN SUPPORT OF MOTION<br>FOR RELIEF FROM THE AUTOMATIC STAY<br><br>[PROPERTY: 402 North La Luna Ave, Ojai, CA<br>93023-1538] |

I, George E. Plowden Jr., declare as follows:

1.    I am as a/an <u>Vice President Loan Documentation</u> of Wells Fargo Bank, N.A. ("Movant" or "Creditor").  I have personal knowledge of the matters set forth in this Declaration

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and, if called upon to testify, I could and would competently testify thereto on behalf of Wells Fargo.  This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed herewith.

2.    As part of my job responsibilities for Wells Fargo, I have personal knowledge of and am familiar with the types of records maintained by Wells Fargo in connection with the account that is the subject of the Motion (the "Account") and the procedures for creating those types of records.  I have access to and have reviewed the books, records and files of Wells Fargo that pertain to the Account and extensions of credit given to the Debtor(s) concerning the property securing such Account.

3.    The information in this declaration is taken from Wells Fargo's business records regarding the Account.  The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of Wells Fargo's regularly conducted business activities.  It is the regular practice of Wells Fargo to create and maintain such records.

4.    On July 18, 2017, the Debtor FAMILY MORTGAGE OPTIONS, LLC DBA FAMILY FORECLOSURE RESCUE commenced this voluntary Chapter 7 case in the United States Bankruptcy Court for the Southern District of California, San Diego Division, Case No. 17-04302-CL7.  RONALD E. STADTMUELLER is the duly appointed, qualified and acting Chapter 7 Trustee.

5.    The Debtor's estate includes a beneficial interest in the real property commonly known as  **402 NORTH LA LUNA AVE, OJAI, CA 93023-1538** ("Property"), and legally described in the attached Deed of Trust.

///

6.        On or about February 22, 2007, non-filing Borrower RUDY C BAEZ executed a Note in the original sum of $407,000.00 in favor of WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK.  The Note is secured by a first priority Deed of Trust against said real property recorded on February 28, 2007 as Instrument No. 20070228-00040148-0 in the Office of the County Recorder of Ventura County, CA.   The terms of the Debt Agreement were amended by the attached loan modification agreement entered into by and between Wachovia Mortgage, a division of Wells Fargo Bank, N.A. and the Borrower RUDY C BAEZ dated December 30, 2011 (the "Loan Modification Agreement").

7.        Movant was formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB.     Effective December 31, 2007, World Savings Bank, FSB's charter and bylaws were amended to change its name to Wachovia Mortgage, FSB.  Effective November 1, 2009, Wachovia Mortgage, FSB converted to a national bank with the name Wells Fargo Bank Southwest, National Association.  Additionally, effective November 1, 2009, Wells Fargo Bank Southwest, National Association merged into and became a division of Wells Fargo Bank, National Association.     True and copies of a Note, Deed of Trust, Loan Modification Agreement and compilation of documents from the Office of Thrift Supervision and Comptroller of the Currency that evidence this name change are attached hereto as **Exhibits "1", "2", "3" and "4"**, respectively, and incorporated herein by this reference.

8.        Borrower executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY - Page 3 of 7
bkcabk_Declaration.doc-18/Southern/San Diego/ 7566656

9. The loan is in default for the months of July 1, 2017 through and including May 1, 2018. The delinquency is computed as follows:

**11 Delinquent monthly payments:**
**(5 monthly payments at $1,923.88 each for the months of**
**7/1/2017 through 11/1/2017;**
**4 monthly payments at $2,105.51 each for the months of**
**12/1/2017 through 3/1/2018**
**2 monthly payments at $2,065.25 each for the months of**
**4/1/2018 through 5/1/2018)**

| | |
|---|---|
| **Total Delinquency:** | **$22,171.94** |

10. As of May 3, 2018 the total indebtedness owed to Movant is computed as follows:

| | |
|---|---|
| **Unpaid Principal Balance:** | **$317,769.89** |
| **Accrued Interest:**<br>**(June 1, 2017 through May 3, 2018)** | **$10,431.95** |
| **Late Charges:** | **$123.58** |
| **Escrow Advance Balance:** | **$6,461.74** |
| **Total Indebtedness through May 3, 2018:** | **$334,787.16** |

11. The current bankruptcy case was filed on July 18, 2017 by Debtor Family Mortgage Options, LLC dba Family Foreclosure Rescue in the United States Bankrutpcy Court for the Southern District of California, San Diego Division, Case No. 17-04302-CL7 under Chapter 7 of the United States Bankruptcy Code. The original borrower RUDY C. BAEZ conveyed his right, title and interest in the Property to Debtor FAMILY MORTGAGE OPTIONS, LLC, dba Family Foreclosure Rescue, LLA, a California Limited Liability Company by a Grant Deed recorded September 2, 2014 as Instrument No. 20140902-00109818-0 in the Office of the County Recorder of Ventura County, CA. A true and correct copy of the Grant Deed is attached hereto as **Exhibit "5"** and incorporated herein by this reference.

12. On February 22, 2016, FAMILY MORTGAGE OPTIONS, LLC dba Family Foreclosure Rescue executed a Deed of Trust with Assignment of Rents against the Property in the amount of $6,118,400.00 in favor of CAPSTONE PROPERTIES I, INC. ("Capstone"), which

recorded on February 22, 2016, as Instrument No. 20160222-00022126-0 in the Office of the County Recorder of Ventura County, CA ("Capstone Deed of Trust"). A true and correct copy of the Capstone Deed of Trust is attached hereto as **Exhibit "6"** and incorporated herein by reference.

13. On September 21, 2016, FAMILY MORTGAGE OPTIONS, LLC dba Family Foreclosure Rescue executed a Deed of Trust and Assignment of Rents against the Property in the amount of $50,000.00 in favor of OMAR SEVILLA ("Sevilla"), which recorded on September 21, 2016, as Instrument No. 20160921-00136540-0 in the Office of the County Recorder of Ventura County, CA ("Sevilla Deed of Trust"). A true and correct copy of the Sevilla Deed of Trust is attached hereto as **Exhibit "7"** and incorporated herein by reference.

14. On April 24, 2017, FAMILY MORTGAGE OPTIONS, LLC dba Family Foreclosure Rescue executed a Deed of Lieu of Foreclosure transferring the Property to Capstone. A copy of the Deed in Lieu of Foreclosure recorded on April 27, 2017 as Instrument No. 20170427-00055510-0 in the Office of the County Recorder of Ventura County, CA ("Deed in Lieu") is attached hereto as **Exhibit "8"** and incorporated herein by reference.

15. That same day, on April 24, 2017, Capstone executed a Substitution of Trustee and Full Reconveyance of the Capstone Deed of Trust which appears to reconvey all interest it acquired under the Capsone Deed ofTrust to Family Mortgage Options, LLC dba Family Foreclosure Rescue, the trustor under the Capstone Deed of Trust ("Reconveyance"). A copy of the Reconveyance recorded on April 27, 2017, as Document No. 20170427-00055511-0 in the Office of the County Recorder of Ventura County, CA is attached hereto as **Exhibit "9"** and incorporated herein by reference.

///

///

16.     Debtor's Schedule E identifies borrower RUDY C. BAEZ as the holder of an unliquidated, contingent claim for an Equity Purchase Agreement in an unknown amount. A copy of Debtor's Schedule E is attached hereto as **Exhibit "10"** and incorporated herein by reference.

17.     Debtor's Statement of Financial Affairs reflects at paragraph 5 that the Property described as 402 N. La Luna, Avenue, Los Angeles CA 93023 [*sic*] having a value of $580,000.00 was transferred by a deed of lieu of foreclosure on April 20, 2017 to Capstone Properties I, Inc. Debtor's Statement of Financial Affairs reflects at paragraph 13.2 that Capstone Properties I, Inc. acquired Deed(s) of lieu of foreclosure on three properties subject to Equity Purchase Agreement. A copy of Debtor's Statement of Financial Affairs is attached hereto as **Exhibit "11"** and incorporated herein by reference.

18.     Since the filing of this case, no payments have been received and the loan is due for July, 2017.

19.     To the extent that the Reconveyance sought to revive the Capstone Deed ofTrust in the amount of $6,118,400.00, Movant seeks relief from the automatic stay to proceed with its state law foreclosure remedies.  In addition, to the extent Debtor retained any interest in the equity purchase agreement with borrower RUDY C. BAEZ identified in Debtor's Schedule E and Statement of Financial Affairs, Movant seeks relief from the automatic stay to proceed with its state law foreclosure remedies.  Debtor's Statement of Financial Affairs reflects that the deed in lieu of foreclosure executed by Debtor in favor of Capstone Properties I is subject to the equity purchase agreement.

///

///

1     I have personal knowledge of the foregoing facts are known, and if called as a witness, I

2 would testify competently thereto.

3     I declare under penalty of perjury under the laws of the United States that the foregoing facts

4 are true and correct.

5     Executed this 22nd day of May ,2018 at Fort Mill, SC .

6

7 Wells Fargo Bank NA

8 George E. Plowden Jr.

9 Vice President Loan Documentation
Wells Fargo Bank NA

10 05/21/2018

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**WORLD SAVINGS BANK, FSB**

# FIXED RATE MORTGAGE NOTE

## PICK-A-PAYMENT<sup>sm</sup> LOAN

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.**

LOAN NUMBER: ████████                    DATE: **February 22, 2007**

BORROWER(S):  **RUDY C BAEZ, AN UNMARRIED MAN**   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: **402 NORTH LA LUNA AVE, OJAI, CA  93023-1538**

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$407,000.00** , called "Principal," plus interest, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES**, or anyone to whom this Note is transferred.

**2.  INTEREST**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of **6.950%**. Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.



LENDER'S USE ONLY

EXHIBIT 1

**3. PAYMENTS**

**(A)   Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **1st** day of each month beginning on **April 1, 2007**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **March 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 1,597.59**. This amount will change as described in Sections 3(C) and 3(D) below. My initial  monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)   Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **1st** day of **April, 2008** and on that day every **12th**  month thereafter until the **121st** month, which will be the final payment change. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance together with interest, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap."  The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**THIS SPACE INTENTIONALLY LEFT BLANK**

EXHIBIT 1

**(E)    Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)    Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date together with interest, in substantially equal payments.

**(G)    Final Payment Change**

On the **10th** Payment Change Date my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply.

**(H)    Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date.

**4.    FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.    BORROWER'S RIGHT TO PREPAY**

**I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.**

**6.    MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

EXHIBIT 1



**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **402 NORTH LA LUNA AVE, OJAI, CA  93023-1538**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26**:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>**Acceleration of Payment of Sums Secured.**</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.



EXHIBIT 1



**12. GOVERNING LAW; SEVERABILITY**

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

**13. CLERICAL ERRORS**

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**14. LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

EXHIBIT 1

**SIGNATURE PAGE**

**NOTICE TO BORROWER(S):**

**BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.**

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED**

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____    (Seal)
RUDY C BAEZ

SD253 (2004-03-1)          [W14 (2004-03-01)]          Page 6 of 6          CA

EXHIBIT 1

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A., successor by merger with
Wells Fargo Bank Southwest, N.A., F/K/A Wachovia Mortgage, FSB,
F/K/A World Savings Bank, FSB

*Tabatha Lynn Simmons*

**Tabatha Lynn Simmons**
**Vice President Loan Documentation**

# EXHIBIT 1

# EXHIBIT 2

This instrument filed for record by
First American Title Company

**RECORDING REQUESTED BY:**
**WORLD SAVINGS BANK**

**WHEN RECORDED MAIL TO:**
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

**LOAN NUMBER** ▮▮▮▮▮▮▮

**NOTE AMOUNT: $407,000.00**

```
20070228-00040148-0  1/18
Ventura County Clerk and Recorder
Philip J. Schmit
02/28/2007 08:00:00 AM
58672 $60.00 RE
```

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $508,750.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.    **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
    **(A)   Security Instrument.** This Deed of Trust, which is dated **February 22, 2007,** will be called the "Security Instrument."

    **(B)   Borrower.   RUDY C BAEZ, AN UNMARRIED MAN**  sometimes will be called "Borrower" and sometimes simply "I" or "me."

    **(C)   Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is **a FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-3)

DEFERRED INTEREST                            Page 1                            CA

**LENDER'S USE ONLY**

EXHIBIT 2

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$407,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **March 1, 2037** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)    The Property which is located at **402 NORTH LA LUNA AVE, OJAI, CA 93023-1538**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)
DEFERRED INTEREST

CA

# EXHIBIT 2

Created By: Savant047  Printed: 7/10/2015 3:42:21 PM PST

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

**1.    BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.    PAYMENTS FOR TAXES AND INSURANCE**

    **(A)    Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)

CA

EXHIBIT 2

**(B)       Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

Page 4                                                                CA

3.    **APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4.    **BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.    **BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)

CA

EXHIBIT 2

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

## 6.  BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)

CA

EXHIBIT 2

**7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.    LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)                                                                                    CA

EXHIBIT 2

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12. MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)

CA

EXHIBIT 2  Page 8 of 8

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **402 NORTH LA LUNA AVE, OJAI, CA  93023-1538**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

EXHIBIT 2

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.     CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.     LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.     WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.     CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.     MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)                                                                                                    CA

EXHIBIT 2

**(B)**    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.    FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)

CA

**EXHIBIT 2**

**26.     AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**THIS SPACE INTENTIONALLY LEFT BLANK.**

**27.     SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)     [L01 (2006-08-1)]                                                          CA

**EXHIBIT 2**

28. **RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

29. **RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

30. **STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-3)

CA

EXHIBIT 2



**31.    ( X )    QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**32.    ( X )    OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**( X )    VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-3)    [N01 (2006-08-1)]

CA

**EXHIBIT 2**

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

#### BORROWER(S):

_____    (Seal)

RUDY C BAEZ

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-03-1)          [AF1 (2004-03-1)]                    Page 15                    **CA**
                          [B01 (2004-03-1)]

EXHIBIT 2

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of VENTURA }  ss.

On 2-22-2007 before me, Jill WATERS NOTARY PUBLIC
     Date                              Name and Title of Officer (e.g. "Jane Doe, Notary Public)

personally appeared Rudy C. Baez
                              Name(s) of Signer(s)

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
         Signature of Notary Public

[Notary Seal: JILL WATERS
Commission # 1516354
Notary Public - California
Ventura County
My Comm. Expires Sep 28, 2008]

──────────── OPTIONAL ────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: D.O.T.

Document Date: _____     Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"

## LEGAL DESCRIPTION

**LOAN NO** ███████████

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **VENTURA** STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

SD001 (2003-03-2) [GF430A1]                    Page 16 of 16                                CA

EXHIBIT 2

Title Order Number:

File Number:        VCA-2672262

**Exhibit "A"**

Real property in the unincorporated area of the County of Ventura, State of California, described as follows:

LOT 16 OF BLOCK "J" OF MEINERS OJAI OAKS SUBDIVISION NO. 3, IN THE CITY OF VENTURA, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 13, PAGE 55 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO THAT PORTION OF LOT 17 OF SAID BLOCK "J", LYING NORTHWESTERLY OF THE SOUTHWESTERLY PROLONGATION OF THE SOUTHEAST LINE OF SAID LOT 16.

APN: 017-0-051-140

**EXHIBIT 2**

# EXHIBIT 3

Mail Workflow
DEC 0 6 2011

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I") [1]:  **RUDY C BAEZ**

Lender ("Lender"):  **Wachovia Mortgage,**
**a division of Wells Fargo Bank, N.A.**

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **2/22/2007**
Loan Number:  ██████████
Property Address ("Property"):  **402 NORTH LA LUNA AVE**
**OJAI, CA 93023-1538**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied

1    **My Representations and Covenants.**  I certify, represent to Lender, covenant and agree

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future,

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned,

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage,

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program")),

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct,

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so, and

    G.  I have made or will make all payments required under a trial period plan

    H.  If I received a discharge in a Chapter 7 bankruptcy proceeding and the mortgage debt was not reaffirmed, then this representation applies  I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents.  Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2    **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that

---
[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I "  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate

 *(page 1 of 5 pages)*

# EXHIBIT 3

Loan Number █████████

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents, and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement

3.  **The Modification**. If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/01/2011 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 12/01/2011

    A   The Maturity Date will be  11/01/2051

    B   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan, less amounts forgiven or waived for NSF fees and outstanding, uncapitalized interest. The new principal balance of my Note will be $393,506.97 (the "New Principal Balance")  I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C   $42,253 19 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") *and will be treated as a non-interest bearing principal forbearance*. I will not pay interest or make monthly payments on the Deferred Principal Balance  The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $351,253.78  Interest at the rate of 2 000% will begin to accrue on the Interest Bearing Principal Balance as of 11/01/2011 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/01/2011   My payment schedule for the modified Loan is as follows

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2 000 % | 11/1/2011 | $ 1,063 69 | $ 357 09 May adjust periodically | $ 1,420 78 May adjust periodically | 12/1/2011 | 60 |
| 6 | 3 000 % | 11/1/2016 | $ 1,235 76 | May adjust periodically | May adjust periodically | 12/1/2016 | 12 |
| 7-40 | 4 000 % | 11/1/2017 | $ 1,417 39 | May adjust periodically | May adjust periodically | 12/1/2017 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly

 *(page 2 of 5 pages)*

EXHIBIT 3

Loan Number ███████

The above terms in this Section 3 C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan  My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance

D    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3 C.

F    I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of   (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date

**Notice to Borrower:**  The Deferred Principal Balance will result in a balloon payment   A balloon payment is a final lump sum payment due at the end of your loan   If you do not have the funds to pay the balloon payment when it comes due, you may have to obtain a new loan against your property to make the balloon payment.   In that case, you may have to pay commissions, fees, and expenses for the arranging of the new loan   In addition, if you are unable to make the monthly payments or the balloon payment, you may lose the property and all of your equity through foreclosure.   Keep this in mind in deciding upon this modification The balloon payment on this loan is due **11/01/2051** or upon earlier payoff of the loan.

4      **Additional Agreements**.  I agree to the following

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased, (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents), or (iii) the Lender has waived this requirement in writing

B    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.    To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan

D    That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.    That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

 *(page 3 of 5 pages)*

# EXHIBIT 3

Loan Number

F   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer   If Lender exercises this option, Lender shall give me notice of acceleration   The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan   Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement, or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement   I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature   At Lender's option, this Agreement will be void and of no legal effect upon notice of such error   If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program

L   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan

M   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity    In addition, I understand and consent to the disclosure of my personal information

 *(page 4 of 5 pages)*

# EXHIBIT 3

Loan Number ██████

and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan, (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s), (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance

P   If your mortgage is a biweekly mortgage with payments due every two weeks, through the attached modification agreement, the Loan will convert to a MONTHLY payment schedule To accommodate monthly payments, interest will be charged based on a 12 month year and a 30 day month

As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled. You need to complete the enclosed Automatic Loan Payment Authorization form to establish automatic payment drafting

In Witness Whereof, the Lender and I have executed this Agreement

Wells Fargo Bank, N.A.

Lender _____        _____  _____ (Seal)
By                                                RUDY C BAEZ              Date
       Mary C Reeder
       Senior Vice President

_12 / 30 / 11_____
Date

# EXHIBIT 3

# EXHIBIT 4



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, D.C. 20552 ▪ (202) 906-6000

**April 21, 2006**

## CERTIFICATE OF CORPORATE EXISTENCE

**REFERENCE:** World Savings Bank, FSB
Oakland, California

I, Nadine Y. Washington, Corporate Secretary, Office of Thrift Supervision, hereby certify, according to the records of the Office of Thrift Supervision, Department of the Treasury, Washington, DC:

1. World Savings Bank, FSB, Oakland, California, was chartered under the laws of the United States to transact the business of a Federal savings bank;

2. The charter of World Savings Bank, FSB, Oakland, California, is in full force and effect;

3. The Office of Thrift Supervision has not appointed a conservator or receiver for World Savings Bank, FSB, Oakland, California; and

4. As of April 21, 2006, World Savings Bank, FSB, Oakland, California, is operating as a BIF-insured financial institution.

**Nadine Y. Washington**
**Corporate Secretary**

# EXHIBIT 4



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

*Nicholas J. Dyer*

Nicholas J. Dyer
Assistant Regional Director

cc: Robert Burns, FDIC - Atlanta

# EXHIBIT 4

### SECRETARY'S CERTIFICATE
### WACHOVIA MORTGAGE, FSB


I, Hope Armstrong Howe, Assistant Secretary of Wachovia Mortgage, FSB (the "Bank") do hereby certify the following:

1.  Attached hereto as Charter No. 7971, is a true and complete copy of the Charter of Wachovia Mortgage, FSB (the "Charter") effective December 31, 2007 and signed by the Secretary and the Director of the Office of Thrift Supervision, and that said Charter is now in full force and effect.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and affixed the seal of the Bank on this 16th day of March, 2009.

*Hope Armstrong Howe*

Hope Armstrong Howe
Assistant Secretary
Wachovia Mortgage, FSB

(SEAL)

EXHIBIT 4

Charter No. 7971
Docket No. 12642

## CHARTER OF WACHOVIA MORTGAGE, FSB

Section 1.   Corporate title.   The full corporate title of the savings bank is Wachovia Mortgage, FSB ("the savings bank").

Section 2.   Office.   The home office of the savings bank shall be located in North Las Vegas, Nevada.

Section 3.   Duration.   The duration of the savings bank is perpetual.

Section 4.   Purpose and Powers.   The purpose of the savings bank is to pursue any or all of the lawful objectives of a Federal savings bank chartered under section 5 of the Home Owners' Loan Act and to exercise all of the express, implied, and incidental powers conferred thereby and by all acts amendatory thereof and supplemental thereto, subject to the Constitution and laws of the United States as they are now in effect, or as they may hereafter be amended, and subject to all lawful and applicable rules, regulations, and orders of the Office of Thrift Supervision ("OTS").

Section 5.   Capital Stock.   The total number of share of all classes of the capital stock which the savings bank has the authority to issue is 30,000, all of which shall be common stock of par value of $10.00 per share.   The shares may be issued from time to time as authorized by the board of directors without the approval of its shareholders, except as otherwise provided in this Section 5 or to the extent that such approval is required by governing law, rule, or regulation. The consideration for the issuance of the shares shall be paid in full before their issuance and shall not be less than the par value.   Neither promissory notes nor future services shall constitute payment or part payment for the issuance of shares of the savings bank.   The consideration for the shares shall be cash, tangible or intangible property (to the extent direct investment in such property would be permitted to the savings bank), labor, or services actually performed for the savings bank, or any combination of the foregoing.   In the absence of actual fraud of a transaction, the value such property, labor, or services, as determined by the board of directors of the savings bank, shall be conclusive.   Upon payment of such consideration, such shares shall be deemed to be fully paid and nonassessable.   In the case of a stock dividend, that part of the surplus of the savings bank which is transferred to stated capital upon the issuance of shares as a share dividend shall be deemed to be the consideration for their issuance.

No shares of common stock shall be issued, directly or indirectly, to officers, directors, or controlling persons of the savings bank other than as part of a general public offering or as qualifying shares to a director, unless the issuance or the plan under which they would be issues has been approved by a majority of the total votes eligible to be cast at a legal meeting.

## EXHIBIT 4

The holders of the common stock shall exclusively possess all voting power. Each holder of shares of common stock shall be entitled to one vote for each share held by such holder, except as to the cumulation of votes for election of directors. In the event of any liquidation, dissolution, or winding up of the savings bank, the holder of the common stock shall be entitled, after payment or provision for payment of all debts and liabilities of the savings bank, to receive the remaining assets of the savings bank available for distribution, in cash or in kind. Each share of common stock shall have the same relative rights as and be identical in all respects with all the other shares of common stock.

Section 6.  Preemptive rights.  Holders of the capital stock of the savings bank shall not be entitled to preemptive rights with respect to any shares of the savings bank which may be issued.

Section 7.  Directors.  The savings bank shall be under the direction of a board of directors. The authorized number of directors, as stated in the savings bank's bylaws, shall not be fewer than five nor more than fifteen except when a greater number is approved by the Director of the OTS.

Section 8.  Amendment of charter.  Except as provided in Section 5, no amendment, addition, alteration, change or repeal of this charter shall be made, unless such is first proposed by the board of directors of the savings bank, then preliminarily approved by the OTS, which preliminary approval may be granted by the OTS pursuant to regulations specifying preapproved charter amendments, and thereafter approved by the shareholders by a majority of the total votes eligible to be cast at a legal meeting. Any amendment, addition, alternation, change, or repeal so acted upon shall be effective upon filing with the OTS in accordance with regulatory procedures or on such other date as the OTS may specify in its preliminary approval.

Attest: _____

Mark C. Treanor, Secretary
Wachovia Mortgage, FSB

Attest: _____

Benjamin P. Jenkins, III, Chairman, President & CEO
Wachovia Mortgage, FSB

Attest: _____

Secretary of the Office of Thrift Supervision

Attest: _____

Director of the Office of Thrift Supervision

Effective Date:  December 31, 2007

# EXHIBIT 4



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:    Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
       bank and application to merge the converted bank with and into Wells Fargo Bank,
       National Association, Sioux Falls, South Dakota
       Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

EXHIBIT 4

# EXHIBIT 5

**RECORDING REQUESTED BY:**

LAWYERS TITLE
~~Burbank~~

**WHEN RECORDED MAIL TO:**
And mail tax stmt to:

Family Foreclosure Rescue, LLC
501 W. Broadway, Suite # 2040
San Diego, CA 92101

AB18213

```
20140902-00109818-0 1/2
Ventura County Clerk and Recorder
MARK A. LUNN
09/02/2014 08:00:00 AM
854672 $556.00 CE
```

APN: 017-0-051-140

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):
DOCUMENTARY TRANSFER TAX is $528    CITY TAX is $0.00
☒ computed on the full value of the property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at the time of sale,
☐ Realty not sold
☒ Unincorporated area    ☐ City of Ojai, and

ACCOMMODATION
This document delivered to Recorder as an accommodation only at the express request of the parties hereto. It has not been examined as to its effect of validity.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Rudy C. Baez, a single man

hereby GRANT(S) to Family Mortgage Options, LLC dba Family Foreclosure Rescue, LLC a California Limited Liability Company

the following described real property in the City of Ojai, County of Ventura, State of California:
As shown in Exhibit "A" attached hereto and made a part hereof, and commonly known as Exhibit "A"

Dated: 8/5/2014

STATE OF CALIFORNIA
COUNTY OF _____Ventura_____  }ss

On _____Aug 5, 2014_____ before me
_____W Gray_____, Notary Public,

personally appeared _____Rudy C. Baez_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

_Rudy C Baez_
Rudy C. Baez

SPACE BELOW RESERVED FOR NOTARY SEAL

W. GRAY
COMM. # 1941864
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
COMM. EXPIRES JULY 18, 2015

EXHIBIT 5

# EXHIBIT "A"

All that certain real property situated in the County of Ventura, State of California, described as follows:

Lot 16, Block "J" of Meiners Ojai Oaks, Subdivision No. 3, in the County of Ventura, State of California, as per map recorded in Book 13, Page(s) 55 through 57 inclusive of Maps, in the Office of the County Recorder of said County.

ALSO, THAT PORTION of Lot 17 in said Block "J", lying Northwesterly of the Southwesterly prolongation of the Southeast line of said Lot 16.

Assessor's Parcel No.:   017-0-051-140

EXHIBIT 5

# EXHIBIT 6

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO

Capstone Properties I, Inc.
8989 Rio San Diego Drive
Suite # 327
San Diego, CA 92108



20160222-00022126-0 1/3
Ventura County Clerk and Recorder
MARK A. LUNN
02/22/2016 09:39:06 AM
1033585 $54.00 CO

**Above Space for Recorder's Use Only**

APN NO.: 017-0-051-140

# DEED OF TRUST WITH ASSIGNMENT OF RENTS
## (Short Form)

**This DEED OF TRUST**, made this **17th day** of **February, 2016**, between **Family Mortgage Options, LLC dba Family Foreclosure Rescue, a California limited liability company,** herein called TRUSTOR, and **Capstone Properties I, Inc., a California corporation,** herein called TRUSTEE, and **Capstone Properties I, Inc., a California corporation,** herein called BENEFICIARY,

**WITNESSETH:** That Trustor irrevocably grants to Trustee in trust, with power of sale, that property in the **County of Ventura**, State of California, commonly known as **402 N. La Luna Avenue, Ojai, California, 93023** and more particularly described on Exhibit "A" attached hereto and incorporated by reference

TOGETHER with the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing: (1) payment of the sum of up to **Six Million One Hundred Eighteen Thousand Four Hundred Dollars ($6,118,400.00)** with interest thereon according to the terms of a Secured Line of Credit Agreement and promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Orange County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 5039 | 124 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |

**(Continued on Next Page)**                                    **PAGE 1**

EXHIBIT 6

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|--------|------|------|--------|------|------|--------|------|------|--------|------|------|
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | | | | | |
| | | | | | | SERIES 5 1964, 149774 | | | | | |

shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties, and printed on pages 4 and 5 hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefore does not exceed the maximum allowed by law.

Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by laws.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

FAMILY FORECLOSURE RESCUE

_____
Steven DeuPree, Manager

> **A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.**

STATE OF CALIFORNIA          }
                                             } S.S.
COUNTY OF SAN DIEGO      }

On February 18 , 2016, before me, Christina Snyder
a Notary Public, personally appeared STEVEN DEUPREE, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

CHRISTINA SNYDER
Commission # 2092972
Notary Public - California
San Diego County
My Comm. Expires Jan 6, 2019

(This area for official notarial seal )

**(Continued on Next Page)**                                      **PAGE 2**

EXHIBIT 6

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 16, BLOCK "J" OF MEINERS OJAI OAKS, SUBDIVISION NO. 3, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 13, PAGES 55 THROUGH 57 INCLUSIVE OF MISCELLANEOUS RECORDS (MAPS), IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO, THAT PORTION OF LOT 17 IN SAID BLOCK "J", LYING NORTHWESTERLY OF THE SOUTHWESTERLY PROLONGATION OF THE SOUTHEAST LINE OF SAID LOT 16.

ASSESSOR'S PARCEL NUMBER: 017-0-051-140

EXHIBIT 6

# EXHIBIT 7

**RECORDING REQUESTED BY:**

Family Foreclosure rescue

**When Recorded Mail Document To:**

Family Mortgage Options, LLC dba Family
Foreclosure Rescue
501 W. Broadway, Suite # 2040
San Diego, CA 92101



‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**20160921-00136540-0 1/6**
Ventura County Clerk and Recorder
MARK A. LUNN
09/21/2016 08:34:44 AM
1112073 $63.00 OR

APN: 017-0-051-140                    SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# DEED OF TRUST AND ASSIGNMENT OF RENTS

**This DEED OF TRUST**, made December 3, 2015, between Family Mortgage Options, LLC dba Family Foreclosure Rescue, herein called Trustor, whose address 501 W. Broadway, Suite # 2040, San Diego, CA 92101 and Omar Sevilla herein called TRUSTEE, and Omar Sevilla, herein called BENEFICIARY,

**WITNESSETH:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the County of Ventura, State of California, described as: 402 N. La Luna Avenue, Ojai, CA 93023

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** (1) Performance of each agreement of Trustor incorporated by reference or contained herein. (2) Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the **PRINCIPAL SUM OF $ 50,000** executed by Trustor in favor of Beneficiary or order. (3) Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it so secured.

The following is a copy of provisions (1) to (14), inclusive, of the fictitious Deed of Trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as set forth at length therein.

**To protect the Security of this Deed of Trust, Trustor Agrees:**
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof,

See Exhibit A

Deed of Trust and Assignment of Rents                                                    020915

EXHIBIT 7



which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do, without notice to or demand upon Trustor, and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto". Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving onto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with

Deed of Trust and Assignment of Rents                                                                                                          020915

EXHIBIT 7

 

sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

DATED:  <u>December 3, 2015</u>

Family Mortgage Options, LLC dba Family Foreclosure Rescue - Manager - Steve DeuPree

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of _____
County of _____
On  before me
, Notary Public,
personally appeared _____

SPACE BELOW RESERVED FOR NOTARY SEAL

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which  the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____

*See Next Sheet*

Deed of Trust and Assignment of Rents                                                    020915

EXHIBIT 7

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

State of California )

County of **San Diego** )

On **December 3, 2015** before me, **Robert J. Osborne, Notary Public**,
*(here insert name and title of the officer)*

personally appeared **Steve Dupree**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature **Robert J. Osborne**

(Seal)

> **ROBERT J. OSBORNE**
> Commission No. 1985121
> NOTARY PUBLIC-CALIFORNIA
> SAN DIEGO COUNTY
> My Comm. Expires DECEMBER 30, 2015

---

## OPTIONAL INFORMATION

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

### Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of **Deed Of Trust And Assignment Of Rents** containing **3** pages, and dated **December 3, 2015**.

The signer(s) capacity or authority is/are as:
- ☐ Individual(s)
- ☐ Attorney-in-Fact
- ☒ Corporate Officer(s) — **Manager** *(title)*

- ☐ Guardian/Conservator
- ☐ Partner - Limited/General
- ☐ Trustee(s)
- ☐ Other:

representing: **Family Mortgage Options, LLC dba Family Foreclosure Rescue**
*(Name(s) of Person(s) or Entity(ies) Signer is Representing)*

### Additional Information

**Method of Signer Identification**
Proved to me on the basis of satisfactory evidence:
- ☐ form(s) of identification   ○ credible witness(es)

Notarial event is detailed in notary journal on:
Page # **28**   Entry # **7**

Notary contact: **Robert J. Osborne**

**Other**
- ☐ Additional Signer(s)   ☒ Signer(s) Thumbprint(s)
- ☐

© Copyright 2007-2014 Notary Rotary, Inc. PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.

EXHIBIT 7

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 16, BLOCK "J" OF MEINERS OJAI OAKS, SUBDIVISION NO. 3, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 13, PAGES 55 THROUGH 57 INCLUSIVE OF MISCELLANEOUS RECORDS (MAPS), IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO, THAT PORTION OF LOT 17 IN SAID BLOCK "J", LYING NORTHWESTERLY OF THE SOUTHWESTERLY PROLONGATION OF THE SOUTHEAST LINE OF SAID LOT 16.

ASSESSOR'S PARCEL NUMBER: 017-0-051-140

EXHIBIT 7

# ILLEGIBLE NOTARY SEAL DECLARATION
## (GOVERNMENT CODE 27361.7)

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary _____Robert J Osborne_____

Commission No. _____1965121_____

Date Commission Expires _____12/30/15_____

Vendor I.D. No. _____ACCT NCCI_____

Date and Place of Notary Execution _____12/3/15 San Diego CA_____

Date and Place of This Declaration _____9/21/16 Ventura CA_____

_____
Signature

_____
Firm Name (if any)

CCR REC 13 rev. 07-94

EXHIBIT 7

# EXHIBIT 8

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:
MAIL TAX STATEMENTS TO:
Capstone Properties I, Inc.
501 W. Broadway, Suite 2040
San Diego, CA 92101

```
20170427-00055510-0 1/4
Ventura County Clerk and Recorder
MARK A. LUNN
04/27/2017 09:20:42 AM
1193770 $33.00 VA
```

THIS SPACE FOR RECORDER'S USE ONLY:

**AP#:** 017-0-051-140        **DEED IN LIEU OF FORECLOSURE**

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

The Grantee named herein was the foreclosing Beneficiary
The amount of the unpaid debt together with cost is $ 6,118,400.00
The amount paid the Grantee is $ 6,118,400.00
Documentary Transfer Tax is: 0

Signature of Declarant

[ ] Unincorporated area

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Family Mortgage Options, LLC dba Family Foreclosure Rescue, LLC, a California Limited Liability Company**

hereby GRANT(s) to:

**Capstone Properties I, Inc., a California Corporation**

the real property in the City of Ojai, County of Ventura, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

**Also Known as:** 402 N. La Luna Avenue, Ojai, CA 93023

EXHIBIT 8

Dated April 20, 2017

Family Mortgage Options, LLC dba Family Foreclosure
Rescue, LLC, a California Limited Liability Company

_____

By Steve DeuPree, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA

COUNTY OF San Diego

On April 24, 2017 before me, Robert J. Osborne A Notary Public personally appeared Steve DeuPree who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Robert J. Osborne_ (Seal)

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:



ROBERT J. OSBORNE
Notary Public - California
San Diego County
Commission # 2154384
My Comm. Expires May 23, 2020

## RECITAL FOR DEED IN LIEU OF FORECLOSURE

"THIS DEED IS AN ABSOLUTE CONVEYANCE, THE GRANTOR HAVING SOLD SAID LAND TO THE GRANTEE FOR A FAIR AND ADEQUATE CONSIDERATION, SUCH CONSIDERATION, IN ADDITION TO ANY ABOVE RECITED, BEING FULL SATISFACTION OF ALL OBLIGATIONS SECURED BY DEED OF TRUST EXECUTED BY Family Mortgage Options, LLC dba Family Foreclosure Rescue, LLC, a California Limited Liability Company, AS TRUSTOR, Capstone Properties I, Inc, a California Corporation, AS TRUSTEE, RECORDED ON February 22, 2016 AS INSTRUMENT NO. 20160222-00022126-0, OFFICIAL RECORDS OF Ventura COUNTY, STATE OF CALIFORNIA

GRANTOR DECLARES THAT THIS CONVEYANCE IS FREELY AND FAIRLY MADE, AND THAT THERE ARE NO AGREEMENTS, ORAL OR WRITTEN, OTHER THAN THIS DEED BETWEEN GRANTOR AND GRANTEE WITH RESPECT TO SAID LAND"

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 16, BLOCK "J" OF MEINERS OJAI OAKS, SUBDIVISION NO. 3, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 13, PAGES 55 THROUGH 57 INCLUSIVE OF MISCELLANEOUS RECORDS (MAPS), IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO, THAT PORTION OF LOT 17 IN SAID BLOCK "J", LYING NORTHWESTERLY OF THE SOUTHWESTERLY PROLONGATION OF THE SOUTHEAST LINE OF SAID LOT 16.

ASSESSOR'S PARCEL NUMBER: 017-0-051-140



EXHIBIT 8

# EXHIBIT 9

RECORDING REQUESTED BY:

Capstone Properties I, Inc.

AND WHEN RECORDED MAIL TO:

Capstone Properties I, Inc.
8989 Rio San Diego Drive
Suite #327
San Diego, CA 92108

Order No.:

Escrow No.:

APN:

```
20170427-00055511-0 1/2
Ventura County Clerk and Recorder
MARK A. LUNN
04/27/2017 09:20:43 AM
1193770 $31.00 VA
```

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

WHEREAS, Family Mortgage Options, LLC dba Family Foreclosure Rescue, a California limited liability company was the original Trustor, Capstone Properties I, Inc., a California Corporation was the original Trustee, and Capstone Properties I, Inc., a California corporation was the original beneficiary under that certain Deed of Trust dated February 17th, 2016 and recorded on February 22nd, 2016 as Instrument No. 20160222-00022126-0 1/3 of Official Records of Ventura County, California, describing land therein as: 402 N. La Luna Avenue, Ojai, CA 93023 (see Exhibit "A")

WHEREAS, the undersigned Beneficiary desires to substitute a new Trustee under said deed of trust in place of Capstone Properties I, Inc., a California corporation .

NOW THEREFORE, the undersigned hereby substitute(s) itself/himself/herself/themselves as Trustee under said Deed of Trust and does hereby RECONVEY, without warranty, to the person or persons legally entitled thereto, the estate now held by it thereunder.

Dated: April 24th, 2017

Capstone Properties I, Inc.

By: Robert DeuPree, President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) SS.
COUNTY OF San Diego )

On April 24th, 2017 before me, Robert J. Osborne , Notary Public, personally appeared Robert DeuPree ,
who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Robert J. Osborne_

```
ROBERT J. OSBORNE
Notary Public - California
San Diego County
Commission # 2154384
My Comm. Expires May 23 2020
```

FOR NOTARY STAMP

EXHIBIT 9

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 16, BLOCK "J" OF MEINERS OJAI OAKS, SUBDIVISION NO. 3, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 13, PAGES 55 THROUGH 57 INCLUSIVE OF MISCELLANEOUS RECORDS (MAPS), IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO, THAT PORTION OF LOT 17 IN SAID BLOCK "J", LYING NORTHWESTERLY OF THE SOUTHWESTERLY PROLONGATION OF THE SOUTHEAST LINE OF SAID LOT 16.

ASSESSOR'S PARCEL NUMBER: 017-0-051-140

EXHIBIT 9

# EXHIBIT 10

8/11/17 1:17PM

| Fill in this information to identify the case: |
|---|
| Debtor name **Family Mortgage Options, LLC dba Family Foreclosure Rescue** |
| United States Bankruptcy Court for the: SOUTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) **17-04302-CL7** |

■ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims           12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**Franchise Tax Board**<br>**Chief Counsel, General Counsel**<br>**MS A260, PO Box 1720**<br>**Rancho Cordova, CA 95741-1720** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $0.00 | $0.00 |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (9) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |
| **2.2** | Priority creditor's name and mailing address<br>**Franchise Tax Board**<br>**PO Box 942857**<br>**Sacramento, CA 94257-0531** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $6,600.00 | $0.00 |
| | Date or dates debt was incurred<br>**04/15/2016** | Basis for the claim:<br>**Tax Year 2016 Minimum Payment and LLC Fees.**<br>**Tax Year 2017 Minimum Payment and LLC Fees.** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (1) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

# EXHIBIT 10

8/11/17 1:17PM

| Debtor | Family Mortgage Options, LLC dba Family Foreclosure Rescue | Case number (if known) |
|---|---|---|

**CORRECTED**

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $7,669.33 |
|---|---|---|---|

Bonifacio Jr. & Elizabeth Alip
611 South Pacific Drive
Fullerton, CA 92833

Date(s) debt was incurred  **10/5/16**

Last 4 digits of account number __

■ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:  **Equity Purchase Agreement**

Is the claim subject to offset? ■ No  ☐ Yes

**CORRECTED**

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $200,000.00 |
|---|---|---|---|

Brigid K. O'Brien
c/o Robert S. Valentine, Esq.
1334 Park View Ave, Ste. 100
Manhattan Beach, CA 90266-3788

Date(s) debt was incurred  **4/2016**

Last 4 digits of account number __

■ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:  **Stipulated judgment**

Is the claim subject to offset? ■ No  ☐ Yes

**CORRECTED**

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $10,000.00 |
|---|---|---|---|

Capstone Global Investment LLC
8989 Rio San Diego Dr.
Suite 327
San Diego, CA 92108

Date(s) debt was incurred  **5/6/14**

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Unsecured loan**

Is the claim subject to offset? ■ No  ☐ Yes

**CORRECTED**

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|

Daniel L. Teckenoff
Angela Palm Bagdanov
401 West A St., Ste 1880
San Diego, CA 92101-7922

Date(s) debt was incurred  **5/7/15**

Last 4 digits of account number __

■ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim:  **Equity Purchase Agreement**

Is the claim subject to offset? ■ No  ☐ Yes

**CORRECTED**

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $400,000.00 |
|---|---|---|---|

EGB Group
c/o Willam R. Larr, Esq.
707 Wilshire Blvd., Ste 4000
Los Angeles, CA 90017-3623

Date(s) debt was incurred  **4/2013**

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **Indemnity claim**

Is the claim subject to offset? ■ No  ☐ Yes

**CORRECTED**

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $26,909.76 |
|---|---|---|---|

Gregory Bateman
13348 January Court
Corona, CA 92879

Date(s) debt was incurred  **12/22/15**

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Equity Purchase Agreement**

Is the claim subject to offset? ■ No  ☐ Yes

**CORRECTED**

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $0.00 |
|---|---|---|---|

Konica Minolta Premier Finance
1111 Old Eagle School Rd.
Wayne, PA 19087-1453

Date(s) debt was incurred  **7/24/14**

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Equipment Lease Agreement**

Is the claim subject to offset? ■ No  ☐ Yes

EXHIBIT 10

8/11/17 1:17PM

| Debtor | Family Mortgage Options, LLC dba Family Foreclosure Rescue | Case number (if known) | |
|--------|-----------|---------|--|

CORRECTED

**3.8** Nonpriority creditor's name and mailing address

**Miguel Lopez**
**1512 Dunn Ave.**
**Los Angeles, CA 90063**

Date(s) debt was incurred  **8/25/14**

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

■ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim: **Equity Purchase Agreement**

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

CORRECTED

**3.9** Nonpriority creditor's name and mailing address

**Nancy Hickman**
**333-F North Melrose Dr.**
**Vista, CA 92083**

Date(s) debt was incurred  **4/15/16**

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim: **Equity Purchase Agreement**

Is the claim subject to offset? ■ No ☐ Yes

**$7,569.09**

CORRECTED

**3.10** Nonpriority creditor's name and mailing address

**Pitney Bowes**
**2225 American Dr.**
**Neenah, WI 54956-1005**

Date(s) debt was incurred  **4/20/16**

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Postage meter lease**

Is the claim subject to offset? ■ No ☐ Yes

**$0.00**

CORRECTED

**3.11** Nonpriority creditor's name and mailing address

**Raymond Guiterrez**
**c/o Anthony A. Sears, Esq.**
**2350 N. San Gabriel Canyon Rd.**
**Azusa, CA 91702**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: **Indemnity claim**

Is the claim subject to offset? ■ No ☐ Yes

**$300,000.00**

CORRECTED

**3.12** Nonpriority creditor's name and mailing address

**Rudy C. Baez**
**402 N. La Luna Ave.**
**Ojai, CA 93023**

Date(s) debt was incurred  **7/25/14**

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

■ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim: **Equity Purchase Agreement**

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

CORRECTED

**3.13** Nonpriority creditor's name and mailing address

**Save Your Home Protect Your Eq**
**6368 Chestnut Hill**
**Virginia Beach, VA 23464**

Date(s) debt was incurred  **2015**

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
■ Unliquidated
☐ Disputed

Basis for the claim: **Sales/marketing contract**

Is the claim subject to offset? ■ No ☐ Yes

est.  **$12,000.00**

**3.14** Nonpriority creditor's name and mailing address

**Steven DeuPree**
**9255 Town Center Drive; # 500**
**San Diego, CA 92121**

Date(s) debt was incurred  **2008**

Last 4 digits of account number __

As of the petition filing date, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Business Loan**

Is the claim subject to offset? ■ No ☐ Yes

**$800,000.00**

# EXHIBIT 10

8/11/17  1:17PM

| | | |
|---|---|---|
| Debtor | **Family Mortgage Options, LLC dba Family Foreclosure Rescue** | Case number (if known) |

**CORRECTED**

| 3.15 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $162,885.24 |
|---|---|---|---|
| | **Teeple Hall, LLP** | ☐ Contingent | |
| | **9255 Towne Centre Drive** | ☐ Unliquidated | |
| | **Suite 500** | ☐ Disputed | |
| | **San Diego, CA 92121-3038** | Basis for the claim: **Retain for entity matters and various lawsuits** | |
| | Date(s) debt was incurred **2008-present** | | |
| | Last 4 digits of account number **4900** | Is the claim subject to offset? ■ No ☐ Yes | |

**CORRECTED**

| 3.16 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $11,758.09 |
|---|---|---|---|
| | **Teeple Hall, LLP** | ☐ Contingent | |
| | **9255 Towne Centre Drive** | ☐ Unliquidated | |
| | **Suite 500** | ☐ Disputed | |
| | **San Diego, CA 92121-3038** | Basis for the claim: **Retained for lawsuit FMO adv Gutierrez** | |
| | Date(s) debt was incurred **4/2016-present** | | |
| | Last 4 digits of account number **2000** | Is the claim subject to offset? ■ No ☐ Yes | |

**CORRECTED**

| 3.17 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,305.31 |
|---|---|---|---|
| | **Teeple Hall, LLP** | ☐ Contingent | |
| | **9255 Towne Centre Drive** | ☐ Unliquidated | |
| | **Suite 500** | ☐ Disputed | |
| | **San Diego, CA 92121-3038** | Basis for the claim: **Retained for lawsuit FMO adv Lopez** | |
| | Date(s) debt was incurred **2/2016-present** | | |
| | Last 4 digits of account number **9700** | Is the claim subject to offset? ■ No ☐ Yes | |

**CORRECTED**

| 3.18 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $12,281.13 |
|---|---|---|---|
| | **Teeple Hall, LLP** | ☐ Contingent | |
| | **9255 Towne Centre Drive** | ☐ Unliquidated | |
| | **Suite 500** | ☐ Disputed | |
| | **San Diego, CA 92121-3038** | Basis for the claim: **Retained for lawsuit FMO adv Person** | |
| | Date(s) debt was incurred **2/2016-present** | | |
| | Last 4 digits of account number **3600** | Is the claim subject to offset? ■ No ☐ Yes | |

**CORRECTED**

| 3.19 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $14,895.94 |
|---|---|---|---|
| | **Teeple Hall, LLP** | ☐ Contingent | |
| | **9255 Towne Centre Drive** | ☐ Unliquidated | |
| | **Suite 500** | ☐ Disputed | |
| | **San Diego, CA 92121-3038** | Basis for the claim: **Retained for lawsuit FMO adv Prisk** | |
| | Date(s) debt was incurred **8/2014-present** | | |
| | Last 4 digits of account number **0500** | Is the claim subject to offset? ■ No ☐ Yes | |

**CORRECTED**

| 3.20 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $13,196.44 |
|---|---|---|---|
| | **Teeple Hall, LLP** | ☐ Contingent | |
| | **9255 Towne Centre Drive** | ☐ Unliquidated | |
| | **Suite 500** | ☐ Disputed | |
| | **San Diego, CA 92121-3038** | Basis for the claim: **Retained for lawsuit FMO adv Weaver** | |
| | Date(s) debt was incurred **11/2014-present** | | |
| | Last 4 digits of account number **1200** | Is the claim subject to offset? ■ No ☐ Yes | |

**CORRECTED**

| 3.21 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,180.43 |
|---|---|---|---|
| | **Teeple Hall, LLP** | ☐ Contingent | |
| | **9255 Towne Centre Drive** | ☐ Unliquidated | |
| | **Suite 500** | ☐ Disputed | |
| | **San Diego, CA 92121-3038** | Basis for the claim: **Retained for lawsuit FMO, LLC adv Zivec Const** | |
| | Date(s) debt was incurred **11/2015-present** | | |
| | Last 4 digits of account number **8200** | Is the claim subject to offset? ■ No ☐ Yes | |

# EXHIBIT 10

8/11/17 1:17PM

| Debtor | **Family Mortgage Options, LLC dba Family Foreclosure Rescue** | Case number (if known) | |
|---|---|---|---|

**CORRECTED**

| 3.22 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $192,734.49 |
|---|---|---|---|

**Teeple Hall, LLP**
9255 Towne Centre Drive
Suite 500
San Diego, CA 92121-3038

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **9/2014-present**

Basis for the claim: **Retained for lawsuit FMO,LLC-Pacheco adv O'Brien (on-going)**

Last 4 digits of account number **3500**

Is the claim subject to offset? ☑ No ☐ Yes

---

**Part 3:    List Others to Be Notified About Unsecured Claims**

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | **Anthony A. Sears, Esq.**<br>2350 N. San Gabriel Canyon Rd.<br>Azusa, CA 91702 | Line **3.11**<br>☐ Not listed. Explain ____ | — |
| ADDED<br>4.2 | **Caine & Weiner**<br>21210 Erwin Street<br>Woodland Hills, CA 91367 | Line **3.10**<br>☐ Not listed. Explain ____ | — |
| 4.3 | **Robert S. Valentine, Esq.**<br>1334 Park View Ave., Ste. 100<br>Manhattan Beach, CA 90266-3788 | Line **3.2**<br>☐ Not listed. Explain ____ | — |
| 4.4 | **William R. Larr, Esq.**<br>Anderson, McPharlin & Conners<br>707 Wilshire Blvd., Ste 4000<br>Los Angeles, CA 90017-3623 | Line **3.5**<br>☐ Not listed. Explain ____ | — |

---

**Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ 6,600.00 |
| 5b. Total claims from Part 2 | 5b. + $ | 2,176,385.25 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ 2,182,985.25 |

# EXHIBIT 10

# EXHIBIT 11

8/11/17 12:12PM

**Fill in this information to identify the case:**

Debtor name    **Family Mortgage Options, LLC dba Family Foreclosure Rescue**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF CALIFORNIA

Case number (if known)    17-04302-CL7

☑ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/16

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:**    **Income**

1. **Gross revenue from business**

   ☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **For prior year:**<br>From **1/01/2016** to **12/31/2016** | ☑ Operating a business<br>☐ Other | $1,529,000.00 |
| **For year before that:**<br>From **1/01/2015** to **12/31/2015** | ☑ Operating a business<br>☐ Other | $1,360,328.00 |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ☑ None.

| Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|
| | |

**Part 2:**    **List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☑ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| | | | |

---

Official Form 207      Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy      page 1

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

# EXHIBIT 11

8/11/17 12:12PM

| Debtor | Family Mortgage Options, LLC dba Family Foreclosure Rescue | Case number *(if known)* | |

**4.** **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1.   Steven DeuPree | 2016-2017 | $54,510.00 | Repayment of loan |
|        Manager | | | |

**5.** **Repossessions, foreclosures, and returns**
List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☐ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|
| Capstone Properties I, Inc. 8989 Rio San Diego Drive #327 San Diego, CA 92108 | 4720 Panorama Drive, San Diego CA 92117 | April 20, 2017 | $1,100,000.00 |
| Capstone Properties I, Inc. 8989 Rio San Diego Drive #327 San Diego, CA 92108 | 1512 Dunn Avenue, Los Angeles CA 90063 | April 20, 2017 | $465,000.00 |
| Capstone Properties I, Inc. 8989 Rio San Diego Drive #327 San Diego, CA 92108 | 402 N. La Luna, Avenue, Los Angeles CA 93023 | April 20, 2017 | $580,000.00 |

**6.** **Setoffs**
List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:**    **Legal Actions or Assignments**

**7.** **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

ADDED

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| Zivec Construction v. EGB Group et al YC069691 | Los Angeles Superior Court 275 Magnolia Street Long Beach, CA 90802 | Real Property Rights | ☑ Pending ☐ On appeal ☐ Concluded |

EXHIBIT 11

8/11/17 12:12PM

| Debtor | Family Mortgage Options, LLC dba Family Foreclosure Rescue | Case number *(if known)* |
|---|---|---|

**ADDED**

| Case title<br>Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| O'Brien v. Family Mortgage Option et al<br>YC069066 | Los Angeles Superior Court<br>275 Magnolia Street<br>Long Beach, CA 90802 | Quiet Title | ☑ Pending<br>☐ On appeal<br>☐ Concluded |

**ADDED**

| Gutierrez v. DeuPree<br>YC071241 | Los Angeles Superior Court<br>275 Magnolia Street<br>Long Beach, CA 90802 | Real Property Rights case | ☑ Pending<br>☐ On appeal<br>☐ Concluded |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

## Part 4:    Certain Gifts and Charitable Contributions

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

## Part 5:    Certain Losses

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B (Schedule A/B: Assets – Real and Personal Property). | Dates of loss | Value of property lost |
|---|---|---|---|

## Part 6:    Certain Payments or Transfers

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | Higgs Fletcher & Mack LLP<br>401 West A Street Suite 2600<br>San Diego, CA 92101 | Attorney Fees | July 18, 2017 | $7,500.00 |
| | Email or website address | | | |
| | Who made the payment, if not debtor?<br>Advanced Equity Holdings LP<br>Sole Member of Debtor | | | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                Best Case Bankruptcy

# EXHIBIT 11

8/11/17 12:12PM

| Debtor | **Family Mortgage Options, LLC dba Family Foreclosure Rescue** | Case number *(if known)* | |
|--------|-----|------|--|

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|-----|-----|-----|-----|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☐ None.
CORRECTED

| | Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|--|-----|-----|-----|-----|
| 13.1 | **Scott Cairncross** 5161 Santa Fe St. #A&B San Diego, CA 92109 | **2012 Hyundai Accent** | **June 2017** | **$9,000.00** |
| | Relationship to debtor **Acquaintance of owner** | | | |

ADDED

| | Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|--|-----|-----|-----|-----|
| 13.2 | **Capstone Properties I, Inc.** 8989 Rio San Diego Drive, #327 San Diego, CA 92108 | **Deed in lieu  of foreclosure on three properties subject ot Equity Purchase Agreement** | **April 2017** | **$2,145,000.00** |
| | Relationship to debtor **Acquaintance of owner** | | | |

**Part 7:    Previous Locations**

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

ADDED
☐ Does not apply

| Address | Dates of occupancy From-To |
|-----|-----|
| 501 West Broadway #2040 San Diego, CA 92101 | January 2013 - January 2016 |

**Part 8:    Health Care Bankruptcies**

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If  debtor provides meals and housing, number of patients in debtor's care |
|-----|-----|-----|

**Part 9:    Personally Identifiable Information**

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                                                    Best Case Bankruptcy

# EXHIBIT 11

8/11/17 12:12PM

| Debtor | **Family Mortgage Options, LLC dba Family Foreclosure Rescue** | Case number *(if known)* | |

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

**Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| | Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1. | **Wells Fargo Bank** | **XXXX-9475** | ☑ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **April 25, 2017** | **$0.00** |

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

**Part 12:   Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

Official Form 207    Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    page 5

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

EXHIBIT 11

8/11/17 12:12PM

| Debtor | Family Mortgage Options, LLC dba Family Foreclosure Rescue | Case number *(if known)* |
|--------|------------------------------------------------------------|--------------------------|

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**
DELETED
- ☑ No.
- ☐ Yes. Provide details below.

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

- ☑ No.
- ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|-----------------------|-------------------------------------|------------------------------|----------------|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

- ☑ No.
- ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|-----------------------|-------------------------------------|------------------------------|----------------|

**Part 13:   Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

- ☑ None

| Business name address | Describe the nature of the business | Employer identification number Do not include Social Security number or ITIN. Dates business existed |
|-----------------------|-------------------------------------|------------------------------------------------------------------------------------------------------|

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
- ☐ None

CORRECTED

| Name and address | Date of service From-To |
|------------------|--------------------------|
| **26a.1.   Steven Woodland** 8989 Rio San Diego Drive, #327 San Diego, CA 92108 | **January 2017- present** |
| CORRECTED **26a.2.   Jeff Coon** 8989 Rio San Diego Drive, #327 San Diego, CA 92108 | **October 2014- January 2017** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.
- ☑ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.
- ☑ None

---

# EXHIBIT 11

8/11/17 12:12PM

Debtor **Family Mortgage Options, LLC dba Family Foreclosure Rescue**

Case number *(if known)*

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and address |
|---|

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

CORRECTED

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Advance Equity Holdings, LP** | 9255 Towne Centre Drive Suite 500 San Diego, CA 92121-3038 | **Sole Member** | **Sole Member** |

CORRECTED

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Steven DeuPree** | 9255 Towne Centre Drive Suite 500 San Diego, CA 92121-3038 | **Manager** | |

**29.** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☑ No
☐ Yes. Identify below.

**30. Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

CORRECTED

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 **Steven DeuPree** 9255 Towne Centre Drive Suite 500 San Diego, CA 92121-3038 | $54,510.00 | 2016-2017 | **Repayment of loans** |
| **Relationship to debtor** **Manager** | | | |

**31.** Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?

☑ No
☐ Yes. Identify below.

Official Form 207    Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    page 7

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

EXHIBIT 11

8/11/17 12:12PM

Debtor   **Family Mortgage Options, LLC dba Family Foreclosure Rescue**          Case number *(if known)*

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

**Part 14:   Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **August 11, 2017**

/s/ Steven DeuPree                                      **Steven DeuPree**
Signature of individual signing on behalf of the debtor          Printed name

Position or relationship to debtor   **Manager, AEH Mgt., LLC, GP of Advanced Equity Holdings LP**

Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?
☑ No
☐ Yes

EXHIBIT 11